# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00575-CV

**Melinda Torres, Appellant**

**v.**

**Scott and White Clinic and Matthew Porter, M.D., Appellees**

**FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 203,004B, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Melinda Torres appeals from the dismissal of her claims against appellees Scott and White Clinic and Matthew Porter, M.D.  We affirm the trial court's order of dismissal.

### Factual and Procedural Background

In mid-2003, Torres sued appellees for medical malpractice, alleging that they improperly prescribed and dispensed to her a medication called Baycol despite Baycol's earlier removal from the market by the Food and Drug Administration.[1]  On March 4, 2003, the presiding

---

[1]  Torres originally named only Scott and White and Bayer Pharmaceuticals as defendants; she amended her petition about three months later to add Bayer Corporation and Dr. Porter as defendants.  Torres's claims against the Bayer defendants (the "Bayer claims") have been severed and removed to federal court, and the Bayer defendants are not parties to this appeal.

judge of the Third Administrative Judicial Region assigned a pre-trial judge "for all Baycol Litigation filed in the Third Administrative Judicial Region," which includes Bell County. All Baycol litigation in the region was consolidated for pre-trial and discovery purposes, including Baycol-related claims against doctors, HMOs, hospitals, and other defendants.

On June 12, the pre-trial judge signed a "Master Pre-Trial Management Order," which replaced any pre-trial scheduling orders and trial settings in other Baycol cases in the region.[2] The order provided master discovery requests to be served on plaintiffs and the Bayer defendants, but stated that no master discovery requests would be served on physician defendants "unless and until a case has been set for trial, subject to further orders of this Court and/or agreement of the parties." The order provided that no party had waived its rights to seek written discovery from physician defendants, but stated that "no party shall do so at this time, absent a trial setting, without first seeking agreement of the applicable Physician Defendants' counsel or approval of the Court." Finally, the order required physician defendants to provide a plaintiff's complete medical records within sixty days of a written request and stated, "Absent agreement of the parties, which shall not be unreasonably withheld, or order of the Court, no oral deposition of a Physician Defendant shall be set before the particular Physician Defendant's specific case has been set for trial."

On January 15, 2004, Torres filed a motion in her suit asking for an extension of time to file her expert reports, stating that all discovery had been stayed by the pre-trial order and that she was unsure whether her claims against appellees fell within the statutory definition of "health

---

[2] Torres's attorney was appointed as one of two "Plaintiffs' Liaison Counsel." The judge who was assigned to Torres's case in Bell County was the same judge appointed as the pre-trial judge in the consolidated Baycol proceeding.

liability claims." "[I]n an abundance of caution," she sought a thirty-day extension of time to file her reports. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 ("Art. 4590i") (amending Tex. Rev. Civ. Stat. art. 4590i, § 13.01 (governing health liability claims and repealed in 2003, current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2005))). She asserted that the deadline for the reports was January 6, 2004, 180 days after the date on which she added Porter as a defendant, and asked for a thirty-day extension to February 5.[3]

The record does not reflect that Torres set her motion for a hearing or filed any expert reports by her proposed February 5 deadline. On February 13, appellees filed a motion to dismiss because Torres had not timely filed her expert reports. On March 22, the trial court held a hearing on appellees' motion and signed an order dismissing Torres's claims against appellees and severing those claims into a new cause number. On April 21, Bayer filed notice in the trial court that it had removed Torres's remaining claims against it to federal court. Bayer explained that the removal was timely because notice was filed within thirty days of the dismissal of appellees, "the only non-diverse defendants." *See* 28 U.S.C.A. § 1446(b) (West 1994). On April 26, Torres filed a motion for new trial, asserting that she was entitled to a new trial because her attorney was in trial in another state and therefore had been unable to attend the March 22 hearing. Torres contended that she was

---

[3] Torres filed her original petition naming Scott and White as a defendant on April 16, 2003, and amended her petition to add Porter as a defendant on July 10; October 13 was 180 days from April 16, and January 6, 2004 was 180 days from July 10. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (amending Tex. Rev. Civ. Stat. art. 4590i, § 13.01(d) (repealed in 2003, current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2005))) (plaintiff must file expert report as to each doctor or health care provider no later than "the 180th day after the date on which a health care liability claim is filed"). Before the trial court, in their motion to dismiss, appellees stated that Torres "was required to furnish an expert report by January 6, 2004, at the latest, *i.e.*, 180 days following the day Dr. Porter was added as a defendant to this lawsuit," and on appeal they do not dispute Torres's asserted January 6 deadline.

entitled to a hearing on her motion for an extension of the expert-report deadline, arguing that she had relied on the master discovery schedule and discovery responses entered in the consolidated Baycol proceedings. Appellees responded that Torres did not timely inform the trial court of her attorney's conflict with the March 22 hearing; her motion for extension of the report deadline did not provide an adequate excuse for non-compliance; she did not set her motion for a hearing; she did not file her reports by February 5; she did not attempt to obtain discovery under the master pre-trial order; and the master order did not alter the deadline for an article 4590i expert report. Torres's motion was overruled by operation of law seventy-five days after the order of dismissal was signed. *See* Tex. R. Civ. P. 329b(c).

On appeal, Torres argues that (1) the pre-trial management order in the Baycol proceeding deprived her of her rights to due process and equal protection because it restricted her rights to conduct discovery but did not so restrict appellees; (2) the removal of the Bayer claims to federal court prevented her from obtaining a hearing and presenting evidence on her motion for new trial; (3) the trial court should have granted her motion for new trial; and (4) the trial court erred in dismissing her claims against appellees.

**Appellees' Motion to Dismiss the Appeal**

Appellees argue that Torres's appeal should be dismissed because her motion for new trial was filed in the old cause number, not the new number into which her claims against appellees were severed, and therefore did not extend her deadline for filing her notice of appeal. However, both the motion and appellees' response refer only to appellees, the severed claims, and the order dismissing and severing the claims against appellees. To ignore these documents because they were

4

filed in the wrong cause number would elevate form over substance.[4]  Instead, we will consider the arguments made in the motion and response.  We overrule appellees' motion to dismiss the appeal for lack of jurisdiction.  *See Mueller v. Saravia*, 826 S.W.2d 608, 609 (Tex. 1992); *Hall v. Stephenson*, 919 S.W.2d 454, 463-64 (Tex. App.—Fort Worth 1996, writ denied); *see also City of San Antonio v. Rodriguez*, 828 S.W.2d 417, 417-18 (Tex. 1992) (holding that bona fide attempt to perfect appeal, even if filed in incorrect cause number, was sufficient to invoke appellate jurisdiction).  We overrule appellees' motion to dismiss the appeal.

## Pre-Trial Management Order

In her first point of error, Torres contends that the pre-trial management order in the Baycol proceeding unfairly restricted her right to conduct discovery on appellees.  We disagree.

The pre-trial management order limited discovery, it did not abate the cause or order the proceedings stayed.  The order also left room for discovery to be sought through party agreement, which was not to be "unreasonably withheld," or court order.  Torres did not argue or show that she had taken any steps to obtain appellees' agreement or a court order allowing her to seek discovery from appellees.  Even if we assume that Torres was utterly prohibited from deposing or otherwise seeking discovery from appellees, she has not shown that any unequal treatment in the extent of discovery the parties were allowed to seek had any bearing on the dismissal of her claims against appellees.  Torres's claims were dismissed because she failed to file her expert reports as required

---

[4] Torres asserts that because appellees' response to her motion for new trial was filed after notice of the removal was filed, it may have violated the automatic stay.  However, Torres's motion for new trial was also filed after the notice of removal was filed, as well as in the wrong cause number, and we will not elevate form over substance to hold that the documents accidentally filed in the original cause number can not be considered in this appeal.

by article 4590i. The stay of any deposition or written discovery by appellant did not stop Torres from obtaining an expert report. Torres had the ability to obtain her complete medical records, if she did not already have them, and she knew that her claim was based on an allegation that Porter should not have prescribed Baycol and Scott and White should not have dispensed it. Torres could have sought an expert to prepare a report using that information, along with public information about Baycol and its removal from the market. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(s) (staying all discovery in health care liability claims except for written discovery or depositions on written questions, until claimant files expert's report and curriculum vitae).[5] Torres's claims were not dismissed because she filed an expert report that was somehow deficient because of restricted discovery rights. They were dismissed because she did not file an expert report of any kind. Therefore, she has not shown that the pretrial management order had any bearing on the dismissal of her case. We overrule Torres's first point of error.

## Removal to Federal Court

In her second point of error, Torres argues that the removal of the Bayer claims to federal court prevented her from setting a hearing on her motion for new trial. However, Torres does not present any argument or authority to show how the removal affected her severed claims against appellees, other than to cite case law holding that "[o]nce removal is effected, 'the State court shall proceed no further unless and until the case is remanded.'" *Meyerland Co. v. Federal Deposit Ins. Corp.*, 848 S.W.2d 82, 83 (Tex. 1993) (quoting 28 U.S.C.A. § 1446(d) (West 1994)).

___

[5] We do not mean to suggest that Torres was bound by the provisions of section 74.351. We cite this section only to highlight that expert reports are regularly prepared in medical malpractice claims before discovery is complete.

6

In the order of dismissal, signed March 22, 2004, the trial court severed her claims against appellees into a different cause number, ordering that appellees' motion to dismiss and the dismissal order be filed in the new cause. The notice of removal of the Bayer claims was filed about a month later, on April 21. Once the trial court signed the order of dismissal and severance, the removal of the Bayer claims had no effect on her severed claims against appellees. Therefore, the removal and stay related to the Bayer claims did not prevent Torres from presenting her motion for new trial and seeking a hearing on her motion. We overrule Torres's second point of error.

### Dismissal for Failure to File Expert Reports

In her fourth point of error, Torres asserts that the trial court erred in granting appellees' motion to dismiss for failure to file an expert report. She argues that the trial court "effectively abated discovery," and thus tolled the deadline for filing her expert reports, and that it would be unfair to impose the expert report deadline on her while "depriv[ing]" her of her right to seek discovery from appellees. Although she focuses her argument on whether the trial court should have held a hearing on her motion for an extension or whether the pre-trial management order was unfair and hindered her efforts to obtain an expert report, we will also consider the broader issue of whether she was entitled to an extension of time to file her expert report and the propriety of the trial court's dismissal of her claims for failure to file a report.

Torres asserts that a trial court "may not deprive a party of a right to discovery and, at the same [time], impose deadlines for filing expert reports which would require her to obtain the reports without access to the compulsory discovery process under the Texas Rules of Civil Procedure." The cases Torres cites, however, involve automatic stays of "all proceedings" related

7

to impaired insurers. *See Campbell v. Kosarek*, 44 S.W.3d 647, 650 (Tex. App.—Dallas 2001, pet. denied) (trial court abated "all proceedings" for sixty days, thus tolling expert-report deadline);[6] *Tibbetts v. Gagliardi*, 2 S.W.3d 659, 664 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (insurance stay halted for six months "*all proceedings* in which an impaired insurer is a party or is obligated to defend a party in any court in this state," including filing deadline for expert report (quoting Tex. Ins. Code Ann. art. 21.28-C, § 17 (West Supp. 2005)). Torres asserts that *Campbell* "squarely held that [where] a Trial Court abates discovery, the 180 day provisions mandating filing of an expert witness report under § 13.01 of Article 4590i are tolled." *Campbell*, however, concerns a case in which the trial court abated "all proceedings," during which time the plaintiff was not required to and, indeed, could not file any expert reports, and thereby suspended the statutory deadlines for filing an expert report. *Id*. at 650.

The pre-trial management order here did not abate or stay "all proceedings," and served only to coordinate and consolidate discovery and pre-trial matters. The order stayed discovery against medical providers until the cases were set for trial, but allowed plaintiffs to seek agreement or court order to conduct discovery earlier. Torres did not show that she made any effort to obtain agreement or a court order, nor did she show how it was necessary for her to conduct discovery before she could prepare her expert report. In her motion for an extension of time, she said only that her attorney had been sick for the last month, which had "hampered him in his pursuit of

---

[6] Torres also argues that *Campbell v. Kosarek* "stresses the importance of an evidentiary hearing" on a motion to dismiss for failure to file an expert report. 44 S.W.3d 647 (Tex. App.—Dallas 2001, pet. denied). However, the only reference to evidentiary hearings in *Campbell* is an observation that the trial court held a hearing on the defendants' motions to dismiss. *Id*. at 649. Here, the trial court held a hearing on appellees' motion to dismiss, but Torres and her attorney did not appear.

this case including the retention of an expert witness." Nothing in the pre-trial order can be construed as staying or abating the cause so as to toll the running of the article 4590i deadline for expert reports. *See Tesch v. Stroud*, 28 S.W.3d 782, 787 (Tex. App.—Corpus Christi 2000, pet. denied) (proposed scheduling order addressed deadlines for designating experts and did not address or toll deadline for 4590i expert reports). Therefore, the pre-trial management order did not toll the deadline for obtaining an expert report or hamper Torres's ability to obtain an expert report.[7]

Formerly, a plaintiff suing for medical malpractice under article 4590i had two options for seeking more time to file her expert reports—a thirty-day extension under subsection 13.01(f) or a thirty-day "grace period" under subsection 13.01(g). Art. 4590i, § 13.01(f), (g); *Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 336 (Tex. App.—Texarkana 2004, pet. denied). Under subsection 13.01(f), a trial court had the discretion to grant a thirty-day extension if the plaintiff showed good cause for the extension. Art. 4590i, § 13.01(f); *Whitworth v. Blumenthal*, 59 S.W.3d 393, 397 (Tex. App.—Dallas 2001, pet. dism'd by agrm't); *see Knie v. Piskun*, 23 S.W.3d 455, 462 (Tex. App.—Amarillo 2000, pet. denied) (grant or denial of § 13.01(f) extension reviewed for abuse of discretion); *Roberts v. Medical City Dallas Hosp., Inc.*, 988 S.W.2d 398, 402 (Tex. App.—Texarkana 1999, pet. denied) (same). However, an extension under subsection 13.01(f) was only available to a plaintiff who filed her expert report within 210 days of filing her suit. *Whitworth*, 59 S.W.3d at 397; *Knie*, 23 S.W.3d at 461-62; *see Pfeiffer v. Jacobs*, 29 S.W.3d 193, 197 (Tex.

---

[7] Torres also argues that she was entitled to a hearing on her motion, but was "denied a hearing as a result of the Trial Court's actions," but the record does not reflect that Torres attempted to set a hearing on her motion at any time, nor did she file an expert report by her proposed February 5 deadline or even by the date of the hearing on appellees' motion to dismiss in late March.

App.—Houston [14th Dist.] 2000, pet. denied). Although Torres's motion seemed in large part to seek an extension under section 13.01(f), she did not file any expert reports before the trial court dismissed her case on March 22, more than 210 days after she filed suit. Therefore, Torres was not eligible for an extension under subsection 13.01(f), and the trial court did not abuse its discretion in failing to grant such an extension.

Under subsection 13.01(g), a plaintiff could request a thirty-day "grace period," which the trial court was required to grant if the plaintiff showed that the failure to file an expert report was due to accident or mistake and not intentional or the result of conscious indifference. Art. 4590i, § 13.01(g); *Whitworth*, 59 S.W.3d at 398. If a plaintiff sought a 13.01(g) grace period and showed accident or mistake, the trial court had no discretion to deny the request. *Walker v. Gutierrez*, 111 S.W.3d 56, 62-63 (Tex. 2003); *see* art. 4590i, § 13.01(g). In determining whether a plaintiff showed accident or mistake, we look to the parties' and their attorneys' knowledge and acts. *Walker*, 111 S.W.3d at 64; *Whitworth*, 59 S.W.3d at 400. A plaintiff had the burden of showing some excuse, but not necessarily a good excuse, that established a lack of intentional disregard or conscious indifference. *Whitworth*, 59 S.W.3d at 401; *Pfeiffer*, 29 S.W.3d at 198; *Roberts*, 988 S.W.2d at 403; *McClure v. Landis*, 959 S.W.2d 679, 681 (Tex. App.—Austin 1997, pet. denied). If the plaintiff's factual assertions were not controverted, the plaintiff satisfied her burden if the testimony set forth "facts that, if true, negate[d] intentional or consciously indifferent conduct." *Walker*, 111 S.W.3d at 64. Some mistakes of law may show accident or mistake, but not every mistake of law will be considered a sufficient excuse. *Id*. A party who filed suit "on claims subject to article 4590i [was] charged with knowledge of the statute and its requirements." *Id*.

10

Torres's motion was titled a motion for an extension of time "pursuant to article 4590i, section 13.01(f)." In the motion, she requested an extension pursuant to "section 13.01(f) and (g)," explaining that counsel was not sure whether article 4590i applied and, therefore, whether expert reports were required, and that counsel had been ill for the last month. Torres said:

> The possibility that this Court may ultimately determine that Plaintiff's case is a health liability claim under Article 4590i of V.A.T.S. and that the requirements for a cost bond, deposit, or expert report, apply and counsel's illness over the last thirty days which has hampered him in his pursuit of this case including the retention of an expert witness to provide a report are facts constituting "good cause" under Section 13.01(f) of Article 4590i, V.A.T.S. Any failure to file an expert report was inadvertent and due to accident or mistake and not conscious indifference.

Although Torres stated that she was unsure whether her claims fell within article 4590i, in her original petition, she asserted "professional malpractice" and "medical liability" against Scott and White, asserting that Scott and White did not exercise the degree of care that an ordinarily prudent health care provider would have exercised. In her amended petition, she stated that she had provided Porter "a Notice of Intent to File a Healthcare Liability Claim under Article 4590i V.A.T.S.," and her third cause of action was titled, "Medical Negligence—Breach of the Standard of Care." It is clear from the pleadings that Torres's claims were health liability claims under article 4590i and thus subject to the expert report requirement, and Torres does not maintain on appeal that she was uncertain that her claims fell within article 4590i.

In her motion, Torres did not explain why her attorney had been unable to retain an expert or what efforts he made towards obtaining a report in the 150 days before he became sick with the flu. Torres's explanation for the delay did not establish that her failure to file her reports was the

11

result of accident or mistake, and therefore, the trial court did not abuse its discretion in refusing to grant a grace period under subsection 13.01(g). *See id.* at 63-64 (supreme court explained inquiry, holding that courts should neither find mistake or accident if plaintiff simply establishes "any mistake of law" nor require showing that error resulted from "inadequate knowledge of facts or unexpected occurrence," and concluded that "some mistakes of law may negate a finding of intentional conduct or conscious indifference, entitling the claimant to a grace period under section 13.01(g)"; however, mistaken belief that expert report omitting one statutory element was sufficient was not mistake of law that entitled plaintiff to grace period); *see also Hall v. Mieler*, 177 S.W.3d 278, 282 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (scheduling order did not address expert reports or art. 4590i deadlines, therefore plaintiff did not meet burden to show mistake or accident); *Tesch*, 28 S.W.3d at 789 (plaintiff not entitled to grace period because attorney mistakenly believed proposed scheduling order governed expert reports); *Roberts*, 988 S.W.2d at 403-04 (plaintiffs entitled to grace period where they provided affidavit and testimonial evidence that senior attorney mistakenly believed report had been filed and that junior attorney to whom case was assigned believed that expert's signed affidavit was document required to be on file (held in *Walker* to be overbroad interpretation of mistake or accident)); *McClure*, 959 S.W.2d at 681-82 (plaintiff entitled to grace period where she offered affidavit and testimony by attorney and paralegal stating that paralegal mistakenly sent expert's letter instead of expert report but that attorney furnished report immediately upon learning of error). We hold that the trial court did not abuse its discretion by failing to grant Torres's motion for extension of time or by dismissing Torres's claims for failure to file an expert report. We overrule Torres's fourth point of error.

## Motion for New Trial

In her third point of error, Torres argues that the trial court erred in overruling her motion for new trial. Torres asserts that because her motion for new trial established that her attorney's failure to attend the hearing was not intentional, she was entitled to a new trial.[8]

A hearing on appellees' motion to dismiss was originally scheduled for March 8, 2004, and notice was sent to Torres on or about February 11. The hearing was then rescheduled for March 22, and notice of the new date was sent on February 19. In her motion for new trial, Torres stated that on the day of the hearing, her attorney was out of the state, participating in a federal criminal case that had commenced in California on February 10, 2004. Torres asserted that her counsel's office contacted the trial court's clerk or coordinator "pursuant to the Administrative Rules and informed the Court of Plaintiff's counsel's trial conflict." In a supporting affidavit, counsel's executive secretary averred that appellees served notice of the original March 8 hearing on February 11, and that on February 19 they sent a letter rescheduling the hearing to Monday, March 22 at 9:30 a.m. Due to some confusion as to whether the March 22 hearing would be rescheduled, counsel's secretary did not realize that the hearing was going to proceed until late on Friday, March 19. Counsel's office faxed notice of the conflict to the trial court at about 1:20 a.m. on Saturday morning, called the trial court's court coordinator on Monday morning, and sent another fax explaining the conflict just before 9:00 a.m. on March 22. The court coordinator called counsel's office at about 9:30 a.m. to say she had received the fax.

---

[8] The record does not reflect that Torres set her motion for a hearing, and it was overruled by operation of law on June 7. *See* Tex. R. Civ. P. 329b(c) (if trial court does not rule on motion for new trial, motion is overruled by operation of law seventy-five days after judgment is signed).

Torres argues that because she provided notice to the trial court of counsel's conflict and because the administrative rules governing the trial court "prevent counsel from suffering defaults as a result of conflicting engagements," her motion for new trial should have been granted. The administrative rules in question do provide that if an attorney is in trial in one court, the attorney may not be "put to trial in another court." 3rd Admin. Jud. Region R. 7(A). However, the rules also provide that when an attorney has such a conflict, "[i]t is the duty of the attorney to call the affected judges' attention to all conflicting settings as soon as they are known." 3rd Admin. Jud. Region R. 7(B)(1). In this case, Torres's counsel did not notify the trial court of the conflict between the original March 8 hearing and his California trial, although he had eight days to do so before that hearing was reset for March 22. Although there was apparently confusion in counsel's office as to whether the March 22 hearing had been reset, that confusion did not arise until a "few days" after counsel received notice of the setting. Counsel knew of the conflict at the time he received notice of the hearing, but did not inform the trial court "as soon as [the conflicting settings were] known." Instead, counsel faxed notice of the conflict at about 1:20 a.m. the Saturday before the Monday morning hearing, effectively notifying the court of the conflict the morning of the hearing. Under these facts, Torres has not shown that the trial court abused its discretion in going forward with the hearing in counsel's absence and in failing to grant Torres's motion for new trial. *See Fountain v. Fountain*, No. 03-03-00728-CV, 2005 Tex. App. LEXIS 464, at *6-7 (Tex. App.—Austin Jan 21, 2005, no pet.) (mem. op.) (determination of whether failure to appear is intentional or resulted from conscious indifference turns on parties' knowledge and whether excuses "fall short of what a person of reasonable sensibilities would do under the same or similar circumstances").

14

Even assuming that Torres's attorney acted reasonably and exercised due diligence in notifying the trial court of his conflict, the trial court did not abuse its discretion in failing to grant the motion for new trial. We review a trial court's decision on a motion for new trial for an abuse of discretion. *Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987). In this case, which is similar to a post-answer default judgment, the trial court must test the motion for new trial and any accompanying affidavits against the *Craddock v. Sunshine Bus Lines, Inc.* requirements. *Id.* Under *Craddock*, a default judgment should be set aside and a new trial granted if the movant establishes that (1) her failure to answer was not intentional or the result of conscious indifference, but instead was due to mistake or accident; (2) she had a meritorious defense; and (3) granting a new trial will not unduly harm the non-movant. 133 S.W.2d 124, 126 (Tex. 1939).

In her motion for new trial, Torres asserted that she was entitled to a hearing on her motion for an extension of time and that she was "attempting to rely on Master Discovery taken in other cases[,] which were designated as part of the Baycol litigation." Torres asserted that the pre-trial management order provided that appellees could not be deposed or discovery otherwise taken before the case was set for trial. Torres concluded her argument with the statement that "[t]he dismissal of this case on [appellees'] motion while [Torres] was under the disability of an order preventing discovery without the agreement of [appellees] violated [Torres's] rights to due process and confrontation." Torres's motion at best established only that her failure to appear at the hearing on appellees' motion to dismiss was unintentional. It did not show that she had any meritorious defense to appellees' motion to dismiss or that appellees would not suffer undue harm. *See id.*

15

Therefore, the trial court did not abuse its discretion in failing to grant Torres's motion for new trial. We overrule Torres's third point of error.

## Conclusion

The trial court did not err in dismissing Torres's claims against appellees or in refusing to grant Torres's motion for new trial. We affirm the trial court's order of dismissal.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   April 28, 2006

16